PETTIGREW, J.
[2An employer appeals from a judgment of the Office of Workers’ Compensation Administration (“OWC”)[1] that awarded past benefits, future benefits, penalties, and attorney’s fees in favor of its former employee. For the following reasons, we reverse.
FACTS AND PROCEDURAL HISTORY
On September 8, 2007, claimant, Janice Riker (“Ms.Riker”) is alleged to have sustained a work-related accident and injury during the course of her employment as a prep person for Popeye’s Famous Fried Chicken (“Popeye’s”) in Walker, Louisiana. As part of her Disputed Claim for Compensation — Form 1008, Ms. Riker claimed that between 11:00 and 11:30 a.m. on the aforementioned date, she “fell in the cooler at Popeye’s onto the right side of her body.” Conversely, in its Answer to 1008, Popeye’s asserted Ms. Riker had been fired on the date of her alleged injury for arguing with her supervisor, and that the allegation of injury set forth in Ms. Riker’s 1008 was a false, fraudulent, and retaliatory claim. Popeye’s attached a copy of Ms. Riker’s Separation Notice dated September 8, 2007, to its answer.
In responding to discovery propounded to her by counsel for Popeye’s, Ms. Riker stated that her “injuries as a result of the subject accident include, but are not limited to, neck pain, hip pain, left knee pain, right knee pain, and back pain.” Ms. Rik *519 er added that she also experienced “pain in her shoulder blades initially.” In her subsequently-filed Pre-Trial Statement, Ms. Riker alleged “she was involved in an incident in the freezer resulting in injuries to her neck, back, shoulder, left leg, right leg, lower back, lower back down to legs, tingling in right arm, light hand.”
The matter proceeded to trial on October 22, 2008. At the conclusion of trial, the workers’ compensation judge (“WCJ”) took the matter under advisement and requested the parties submit post-trial mem-oranda within 10 days. The Post-Trial Brief filed on behalf of Ms. Riker stated in part:
[the] accident happened when Janice Riker entered the cooler. As she stood there, she heard a noise, looked over and saw crates of chicken |sabout to topple over onto her. The crates hit the right side of her body. She leaned against them and positioned her body so that the crates would not fall on top of her. She yelled for help.
Ryan Herring, another employee and her son, rushed in to help her. Ryan testified that he entered the freezer to help Ms. Riker, and found Ms. Riker with crates leaning against her. Shortly thereafter, Josh Cox, and Toni Harold entered the cooler to help.... Toni Harold further testified that she walked into the cooler and saw the crates against Ms. Riker and helped get them off of her.... Ryan Herring testified Ms. Riker advised him she was hurt. Ms. Riker testified she told Ryan, Toni, and Josh Cox she was injured. Ms. Riker’s husband further supported her testimony that an accident occurred. He picked her up on the day of the accident. She told him of the accident as well and that she was injured.
[[Image here]]
[M]edical records that were entered into evidence show that Ms. Riker went to the emergency room not long after the accident occurred. Those records reflect that she told them about the accident. After the emergency room, Ms. Riker followed up with Dr. Greta Wilkes. Dr. Wilkes’ records reflect that Ms. Riker told her about the accident. Ms. Riker then began treating with Dr. John Clark and continues to treat with him today. His records clearly reflect that Ms. Riker reported the accident to him. [Footnotes and bold emphasis deleted].
Following the submission of post-trial memoranda, the WCJ rendered and signed a judgment in favor of Ms. Riker on November 20, 2008. Said judgment directed Popeye’s pay Ms. Riker’s past medical expenses, past indemnity, and mileage, together with penalties and attorney’s fees. The judgment further provided that Popeye’s would also “be responsible for paying for any and all future benefits incurred by [Ms. Riker] as a result of the accident sued upon herein.” The judgment failed to specify the nature of said benefits, the amounts, or duration of said benefits, and did not disclose whether Ms. Riker was found to be temporarily or permanently disabled or whether she was entitled to supplemental earnings benefits.
Thereafter, Popeye’s filed for and was granted a suspensive appeal from the judgment of the WCJ, and Ms. Riker subsequently answered the appeal by Popeye’s seeking only an increase in the award of attorney’s fees together with the costs incurred in both courts.
ASSIGNMENTS OF ERROR
In connection with its appeal in this matter, Popeye’s alleges the WCJ erred in the following respects:
*520 |41. In entering a judgment finding Popeye’s liable to Ms. Riker when Ms. Riker failed to carry her substantive burden of proof as to her alleged disabled status with required expert medical testimony;
2. In relying on indeterminate hearsay statements contained in medical records to enter judgment finding Popeye’s liable to Ms. Riker;
3. In permitting evidence, over timely objection, by which Ms. Riker attempted to expand her pleadings to allege a different accident, and more extensive injuries to her body;
4. In entering a judgment finding Popeye’s liable to Ms. Riker for itemized past amounts and for all “future benefits,” without identifying the legal basis on which Popeye’s was found liable, or what the “future benefits” would consist of, and in what amount(s), and for what duration;
5. In failing to properly rule on evi-dentiary objections, while instead permitting Ms. Riker’s counsel to improperly question Popeye’s witnesses, under the guise of determining their credibility;
6. In finding that Popeye’s had acted in an arbitrary or capricious manner in denying Ms. Riker’s request for benefits, and in entering an award of penalties and attorney’s fees therefore; and
7. In failing to find, under the evidence adduced at trial, that claimant was pursuing a fraudulent claim for workers’ compensation benefits.
DISCUSSION
The initial error assigned by Popeye’s is that Ms. Riker failed to carry her burden of proof regarding her alleged disability through expert medical testimony.
The Workers’ Compensation Act provides coverage to an employee for personal injury by accident arising out of and in the course of his or her employment. See, La. R.S. 23:1031(A). An employee must prove the chain of causation required by the workers’ compensation statutory scheme as adopted by the legislature. Harrison v. Baldwin Motors, 2003-2682, p. 3 (La.App. 1 Cir. 11/3/04), 889 So.2d 313, 316, writ denied, 2005-0249 (La.4/1/05), 897 So.2d 609. He or she must establish that the accident was work-related, the accident caused the injury, and the injury caused the disability. Roussell v. St Tammany Parish School Board, 2004-2622, p. 9 (La.App. 1 Cir. 8/23/06), 943 So.2d 449, 457, writ not considered, 06-2362 (La.1/8/07), 948 So.2d 116. Initially, a workers’ compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he or she sustained an injury. See Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987). Next, the claimant must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979); Clark v. Godfrey Knight Farms, Inc., 2008-1723, p. 11 (La.App. 1 Cir. 2/13/09), 6 So.3d 284, 292, writ denied, 2009-0562 (La.5/29/09), 9 So.3d 163.
In order to recover benefits under the workers’ compensation law, a claimant must prove that he or she has suffered a personal injury as a result of a work-related accident and that the injury has rendered him or her either temporarily totally disabled, and/or permanently partially disabled, or entitled to supplemental earnings benefits. Our Lady of the Lake Regional Medical Center v. Matthews, 2006-1584, p. 3 (La.App. 1 Cir. 9/26/07), *521 971 So.2d 354, 357. A claimant seeking to recover indemnity benefits for a temporary or permanent total disability must prove by clear and convincing evidence that he or she is physically unable to engage in any gainful occupation, whether or not the same type of work claimant was engaged in at the time of the injury. La. R.S. 23:1221(l)(c) and (2)(c).
Clear and convincing evidence has been defined as an intermediate standard falling somewhere between the ordinary “preponderance of the evidence” civil standard and the “beyond a reasonable doubt” criminal standard. Zavala v. St. Joe Brick Works, 2007-2217, p. 7 (La.App. 1 Cir. 10/31/08), 999 So.2d 13, 19, writ denied, 2008-2827 (La.1/30/09), 999 So.2d 762. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, in other words, much more probable than not. Magee v. Abek, Inc., 2004-2554, p. 6 (La.App. 1 Cir. 4/28/06), 934 So.2d 800, 807, writ denied, 2006-1876 (La.10/27/06); 939 So.2d 1287. Also, clear and convincing proof requires objective medical evidence of the disabling condition causing the claimant’s inability to engage in any employment. Roussell, 2004-2622 at 10, 943 So.2d at 458. A trier of fact’s belief in a claimant’s selfserving testimony alone is insufficient. Hurst v. Sanderson Farms, Inc., 02-1334, p. 5 (La.App. 1 Cir. 5/9/03), 846 So.2d 954, 958. A claimant must provide objective, expert | fitestimony as to his medical condition, symptoms, pain, and treatment,[2] in addition to personal testimony, in order to meet this standard. Roussell, 2004-2622 at 10, 943 So.2d at 458.
The finding of disability within the framework of the workers’ compensation law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. Johnson v. East Baton Rouge Parish School Board, 2006-1010, p. 4 (La.App. 1 Cir. 3/28/07), 961 So.2d 388, 390.
Whether a claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. Allman v. Washington Parish Police Jury, 2004-0600, p. 3 (La.App. 1 Cir. 3/24/05), 907 So.2d 86, 88. Factual findings in a workers’ compensation case are subject to the manifest error-clearly wrong standard of review. McCray v. Delta Industries, Inc., 2000-1694, p. 4 (La.App. 1 Cir. 9/28/01), 809 So.2d 265, 269. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. Thus, “[if] the [fact finder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact *522 finder’s choice between them cannot be manifestly erroneous. Bolton v. B E & K Construction, 2001-0486, p. 7 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35.
17At the trial of this matter, Ms. Riker put forth the testimony of her son, Ryan Herring, who was also working at Popeye’s on the date in question; Jonathon Sain, a one-time Popeye’s employee; Ms. Riker’s husband, James Polk; and finally, Ms. Riker herself. Aside from her introduction of certified copies of her medical records, Ms. Riker failed to introduce medical testimony from any of her treating physicians regarding her present medical condition. The record before this court is devoid of any objective medical testimony regarding Ms. Riker’s ability to work, her need for medical treatment, or an assignment of a disability rating by her physicians. In addition, there was no evidence as to the extent of Ms. Riker’s formal education, training, or previous work experience. As a result, we must conclude Ms. Riker failed to establish by clear and convincing evidence that she was temporarily or permanently (either totally or partially) disabled, or capable of working but at a diminished capacity that might entitle her to supplemental earnings benefits. Based upon the lack of medical testimony in the record, we further conclude the WCJ lacked sufficient evidence upon which to render judgment in favor of Ms. Riker. For this reason, the judgment of the WCJ in favor of Ms. Riker is hereby reversed, and based upon this finding we pretermit discussion of all remaining assignments of error.[3]
DECREE
For the above and foregoing reasons, the WCJ’s November 20, 2008 judgment awarding disability benefits to claimant, Janice Riker, is hereby reversed. Accordingly, Ms. Riker’s suit is dismissed with prejudice at her costs.
REVERSED AND RENDERED.
CARTER, C.J., Dissents and Assigns Reasons.

. Honorable Robert W. Varnado, Jr. of District 6 presided in this matter.

. In cases where the parties have stipulated to the introduction of claimant's medical records in lieu of live testimony, said records can constitute objective evidence of claimant's medical condition. In the instant case, counsel for Popeye's stipulated only to the authenticity of said records, not to the veracity of the contents of said records.

. In addition, the relief sought by Ms. Riker in her answer to Popeye's appeal, namely, her request for an increase in the award of attorney's fees together with the costs incurred in both courts, is also denied.