McDonald, j.
|2T.K. Stanley, Inc., (Stanley), appellant in this workers’ compensation matter, appeals the decision rendered by the hearing officer finding that the work-related injury of August 6, 2009, caused a fusiform aneurysm that necessitated surgery when the aneurysm ruptured. For the following reasons, we affirm.
FACTS
On August 6, 2009, Mr. Joseph Francis Jackson (Jackson) was employed by Stanley and was working to place a post in the ground. Holding the post-hole digger above his head, he lost his balance, causing the instrument to hit him on his head, which was covered with a construction style hard hat. He was sent to Dr. Jody Plaisance at the Family Doctor Clinic in Thibodeaux for evaluation on August 11, 2009. Dr. Plaisance diagnosed Jackson with a contusion, prescribed Motrin, and released him to return to work effective August 12, 2009. Following the incident, Jackson did not take time off of work and did not return to Dr. Plaisance.
Jackson continued to work full time for Stanley until January 10, 2010, when he was admitted to Thibodeaux Regional Medical Center with complaints of headaches, shortness of breath, and dizziness. He underwent a CAT scan and was diagnosed with an intraparenchymal hemorrhage in the left temporal and adjacent parietal lobes with subarachnoid hemorrhage. Jackson was subsequently transferred to West Jefferson Medical Center for emergency treatment.
*745 At West Jefferson, Jackson was treated by Dr. Arthur Ulm, a neurosurgeon. According to the operative report, Dr. Ulm performed a three vessel cerebral arterio-gram, left-sided craniotomy hematoma evacuation, and resection of a myotic fusi-form aneurysm with clipping of afferent and efferent vessels. Jackson was discharged from West Jefferson Medical Center on February 2, 2010.
On August 4, 2010, Jackson filed a disputed claim for compensation alleging a severe head injury on August 6, 2009, requiring surgical intervention. Stanley | shad no evidence to support a causal connection between the work accident and the January 10, 2010 aneurysm until July 11, 2011, when Dr. Ulm submitted an affidavit, in conjunction with a motion for summary judgment, stating it was his opinion that the cause of Jackson’s intracerebral hemorrhage was the head trauma suffered during the work-related accident of August 6, 2009. Subsequently, Dr. Ulm gave two depositions, on January 16, 2012, and March 4, 2013, wherein he maintained his opinion that the cause of Jackson’s injuries was the work-related accident.
Thereafter, Stanley chose Dr. Najeeb Thomas, a neurosurgeon, to evaluate Jackson. It was Dr. Thomas’ opinion that Jackson sustained a local soft tissue injury to the head in the work-related accident that was unrelated to the January 10, 2010 aneurysm and hemorrhage. In arriving at this opinion, Dr. Thomas reviewed Jackson’s medical records, obtained a history from Jackson and his wife, and conducted a physical examination. In his deposition taken on February 19, 2013, Dr. Thomas maintained his opinion that the work-related accident of August 6, 2009, and the subsequent aneurysm and hemorrhage were unrelated. As a potential cause, Dr. Thomas noted Jackson’s uncontrolled hypertension as well as possible atheroscler-otic disease, and could not rule out a congenital cause or infection.
Given the completely divergent opinions, the hearing officer appointed Dr. Deepak Awasthi, a neurosurgeon, as an independent medical examiner. Dr. Awasthi evaluated Jackson on July 23, 2012, and prepared a report stating that a fusiform aneurysm was sustained by Jackson on January 10, 2010. Dr. Awasthi did not think it was caused by the work-related injury, but believed that Jackson either had an underlying background from which an aneurysm could form or that he was predisposed. While Dr. Awasthi noted that trauma can be a cause of an aneurysm, he maintained that he had never seen it cause a slowly progressing fusiform aneurysm.
|4A trial on this matter was held on April 24, 2013. The testimonies of Drs. Ulm, Thomas, and Awasthi were introduced by deposition. Mrs. Yvonne Jackson also testified. Post-trial briefs were filed by both parties on May 17, 2013. On My 1, 2013, the hearing officer rendered a written judgment finding that Jackson had established by a preponderance of the evidence that his work-related injury caused him to develop a fusiform aneurysm in the middle cerebral artery. Jackson was found permanently and totally disabled, and entitled to all reasonable and necessary medical treatment related to his workers’ compensation injury. Stanley requested reasons for judgment, and these were issued ón August 23, 2013.
Stanley appeals the judgment, alleging as an assignment of error that the hearing officer disregarded the weight of the medical evidence, especially the opinion of the independent medical examiner, in finding that there was a causal connection between the August 6, 2009 work accident and the January 10, 2010 aneurysm and hemorrhage.
*746 DISCUSSION
Issues Presented and Standard of Review
Stanley alleges: (1) that the overwhelming weight of medical evidence precludes a finding of a causal connection between the August 6, 2009 work accident and the January 10, 2010 aneurysm and hemorrhage; (2) that the workers’ compensation court failed to give the proper legal weight to the opinion of Dr. Deepak Awasthi, the independent medical examiner; and (3) that the workers’ compensation court gave improper weight to the opinion of Dr. Arthur Ulm.
The Workers’ Compensation Act provides coverage to an employee for personal injury by accident arising out of and in the course of his or her employment. La. R.S. 23:1031(A). An employee must prove the chain of causation required by the workers’ compensation statutory scheme as adopted by the legislature. Riker v. Popeye’s Fried Chicken, 09-0527 (La.App. 1 Cir. 10/23/109),,, 29 So.3d 516, 520, writ denied, 09-2776 (La.2/26/10), 28 So.3d 279; Harrison v. Baldwin Motors, 03-2682 (La.App. 1 Cir. 11/3/04), 889 So.2d 313, 316, writ denied, 05-0249 (La.4/1/05), 897 So.2d 609. He or she must establish that the accident was work-related, the accident caused the injury, and the injury caused the disability. Id.; Roussell v. St. Tammany Parish School Board, 04-2622 (La.App. 1 Cir. 8/23/06), 943 So.2d 449, 457, writ not considered, 06-2362 (La.1/8/07), 948 So.2d 116. Initially, a workers’ compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he or she sustained an injury. Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987). Next, the claimant must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. Id.; West v. Bayou Vista Manor, Inc., 371 So.2d 1146,1147 (La.1979).
The finding of disability within the framework of the workers’ compensation law is a legal rather than a purely medical determination. Riker, 29 So.3d at 521. Ultimately the question of disability is a question of fact, and all factual findings in workers’ compensation cases are subject to the manifest error standard of appellate review. Johnson v. East Baton Rouge Parish School Bd., 06-1010 (La.App. 1 Cir. 3/28/07), 961 So.2d 388, 390.
The issues presented for review all have to do with the value placed by the hearing officer on the deposition testimony of the three neurosurgeons consulted in this matter. This value is a finding subject to the manifest error standard of review. The standard applies even when the decision of the workers’ compensation hearing officer is based on written reports, records, or depositions. Buxton v. Iowa Police Dept., 09-0520 (La.10/20/09), 23 So.3d 275, 287. It is also well established that the trier of fact has considerable discretion in accepting or rejecting expert testimony, and that the decision of the workers’ compensation hearing officer to accept the testimony of one expert over another should not be disturbed absent ^manifest error. Ross v. Remediation Services of Louisiana, 97-2102 (La.App. 1 Cir. 5/15/98), 714 So.2d 218, 223.
In response to Stanley’s request for written reasons for judgment, the hearing officer issued the following:
REASONS FOR JUDGMENT
This court rendered Judgment on July 1, 2013, in favor of the employee, Joseph Francis Jackson and against employer, T.K. Stanley, Inc. This court held Mr. Jackson met his burden of *747 proof by a preponderance of the evidence to establish his August 6, 2009, work related injury caused him to develop a fusiform aneurysm at the middle cerebral artery, cortical branch artery location, (MAC M4). This court also held the claimant’s pre-existing hypertension caused the fusiform aneurysm at MAC M4 to rupture.
In weighing the evidence presented and in drawing its conclusion, this Court found Mr. Jackson’s treating physician/surgeon, Dr. Arthur Ulm, to have more insight, knowledge and surgical experience in addressing aneurysms and specifically addressing fusiform aneurysms. Dr. Ulm is a Fellowship trained surgeon in cerebrovascular neurosurgery with a specialization in aneurysms, vascular malformations and stroke. He is also Board Certified.
This Court was impressed by Dr. Ulm’s research and his ability to specifically identify the various locations where different types of aneurysms occur (Plaintiff exhibit 25). Dr. Ulm discussed the uniqueness of the location and the process of elimination procedure used to conclude Mr. Joseph’s initial head trauma suffered on the job lead to the development of the fusiform aneurysm.
Interestingly enough, due to the complexity of Mr. Jackson’s medical condition, the three different neurosurgeons deposed rendered three different conclusions as to what was the precipitating factor to create the aneurysm and what was the precipitating factor to rupture the aneurysm. All three neurosurgeons acknowledged that trauma induced fusi-form aneurysms can be slow to develop. They all agreed that time may elapse between a trauma occurring and the actual worsening of the condition to the status of an aneurysm which ruptures.
In addition to Dr. Ulm’s opinion, this Court found the initial work accident of August 6, 2009, was of a significant trauma to lead to the development of Mr. Jackson’s aneurysm. Mr. Jackson was driving/installing poles into the ground preparing for installation of a barbed wire fence when he lifted a large, heavy, iron pole-driver above his head. (Plaintiff exhibit 24). The pole-driver slipped and struck Mr. Jackson on the crown of his head. He was wearing a hard hat. The incident produced such force that a large raised area developed on the top of his head/forehead even though Mr. Jackson was wearing a hard hat. (Plaintiff exhibit 20).
|7In the medical records of the Family Doctor Clinic on August 6, 2009, (Plaintiff exhibit 10 page 1 and 2 after the certification page), Dr. Jody Plaisance noted in his records that Mr. Jackson reported a post-driver hit him on the top of his head producing a knot and complaints of headaches. Dr. Plaisance diagnosed Mr. Jackson as sustaining a contusion. A contusion is typically a soft tissue injury usually with bruising. A contusion is different than a hemato-ma.
In Mrs. Yvonne Jackson’s testimony at trial, she described seeing a bump on her husband’s head, visible to the naked eye, and visible as her husband walked through the door of their home on the date of the accident. She identified the knot on Mr. Jackson’s head as occurring at the hair line and mid-way to the back of his head.
Thus, this Court concluded there was physical evidence that the blow to the head went through the hard hat and created a visible “knot” on Mr. Jackson’s head. Furthermore, Dr. Ulm testified in his deposition (Plaintiffs exhibit 25, page 40 Line 19 to Page 41 Line 2,) when a patient suffers a soft tissue inju *748 ry, the diagnosis does not exclude the patient from having a deeper injury under the contusion. Considering the above information, this Court concluded the work accident on August 6, 2009, created the fusiform aneurysm.
When addressing the issue of the preexisting hypertension, Dr. Ulm considered Mr. Jackson’s history. Dr. Ulm acknowledged that hypertension can create an aneurysm; however, he concluded Mr. Jackson’s hypertension would not cause the hemorrhage in the MAC M4 location where the aneurysm was found. Dr. Ulm concluded the trauma (from being hit in the head by the pile-driver) created the aneurysm, and the pre-exist-ing hypertension contributed to the rupture of the aneurysm. (Plaintiffs exhibit 25: Page 15 Line 3 to Page 18 line 2; and Page 27 Line 18 to Page 28 Line 8.) This Court gave greater weight to the opinion of Mr. Jackson’s treating physician/surgeon than to the other neurosurgeons.
This Court concluded the need for the surgery on January 10, 2010, was due to the combination of Mr. Jackson’s work accident and his pre-existing hypertension. Consequently, all medical treatment resulting from this aneurysm rupture is attributed to the work accident and is to be covered by T.K. Stanley Inc.’s workers’ compensation policy. The remainder of this Court’s judgment is self-explanatory as to the computation of indemnity benefits and the application and coverage of the medical benefits.
REASONS FOR JUDGMENT RENDERED, AND SIGNED in Houma, Louisiana, on August 22, 2013.
It is clear that the hearing officer gave greater weight to the testimony of Dr. Arthur Ulm because she was impressed with his credentials and experience with aneurysms, as well as the fact that he was the treating physician. Dr. Ulm 1¡¡performed Jackson’s emergency surgery. As the physician that performed the surgery, he observed the aneurysm and was in the best position to evaluate it. Also important was his knowledge, through research and review of medical literature, of types of aneurysms. Furthermore, jurisprudence establishes that great latitude is given to fact-finders in a workers’ compensation trial; especially the weight given to a finding concerning the testimony of doctors. See Mazoch v. Employers Cas. Co., 514 So.2d 1184 (La.App. 1 Cir.1987). The reasons for judgment also establish that the opinions of all the neurosurgeons were considered. We do not find the lack of dependence on Dr. Awasthi’s testimony of any significance.
CONCLUSION
Finding no merit in any of the issues raised by T.K. Stanley, Inc., the judgment rendered by the hearing officer is affirmed. Costs of this appeal are assessed against T.K. Stanley, Inc.
AFFIRMED.